JAMES E. BEAN *vs.* MAINE WATER COMPANY.

Washington.    Opinion February 14, 1899.

*Water Company.    Town.    Way.    Plan.    Evidence.*

When a municipality under legislative authority has designated the place in a street where a water company may erect and maintain a hydrant, the burden is upon the water company to show that it maintains the hydrant in the particular place designated, in case the hydrant is found to be a dangerous obstruction to lawful travel on the street.

When the proper officers of the municipality, acting in accordance with its instructions, have made such designation by marking the place upon a plan of the streets, and have filed with the municipal clerk the plan so marked as the record evidence of their action in the premises, such plan, or a copy thereof, becomes the official and best evidence of what place was designated. Parol evidence is not admissible instead of such plan until the absence of the plan is sufficiently accounted for.

If parol evidence were admissible without the plan, it is insufficient to sustain the water company's burden of proof, when the witnesses testify only that they "think it likely" the hydrant is in the place designated. A mere probability is not enough. The evidence should show it to be a fact.

ON MOTION BY DEFENDANT.

Action on the case brought by the plaintiff to recover damages for injuries claimed to have been received by him, in the evening

of February 6, 1897, while walking upon a sidewalk on North street in the city of Calais, by striking his left knee against a hydrant maintained by the defendant. Plea, general issue, and a verdict of $874.75 for the plaintiff.

From the evidence introduced by the plaintiff it appears that he is about seventy years of age and has lived in and about the city of Calais for a long time. At the date of his injury and for several months prior thereto, he lived upon North street at a place less than four hundred feet east of the hydrant. Upon the evening of the sixth of February he started from his house on North street, and walked to a grocery store on the same street about ninety feet west of the hydrant. After buying a few groceries he started for home and on his way struck the hydrant, falling and injuring his knee. The sidewalk is four feet and nine inches wide, measuring from the fence to the curb. The space between the back side of the hydrant and the fence is about nine inches. The hydrant itself is nine inches in diameter at the widest part. The largest part of a hydrant is at the bottom, so that any object passing by the bulging portion of the hydrant would more than clear the two nozzles that point diagonally up and down the street. The plaintiff claimed that the measurement from the fence to the outer portion of the hydrant was twenty inches.

Aside from the issues of want of due care, contributory negligence and excessive damages, the defendant relied upon chapter 14 of the Special Laws of 1887; and claimed that being a public corporation, engaged in performing a public duty, it was permitted by legislative authority to place its hydrants in such portions of the public streets of Calais as might be selected by its municipal officers, acting as the servants of the state in the performance of a public duty imposed upon them by the legislature. The defendant accordingly claimed that travelers upon any highway injured by coming in contact with lawfully located hydrants, there being no claim whatever of negligence in the character of the hydrant or its maintenance, are without remedy.

*C. B. Rounds and R. J. McGarrigle,* for plaintiff.

*H. M. Heath* and *C. L. Andrews; J. F. Lynch* and *G. A. Curran* (with them,) for defendants.

When a public corporation acting under the authority of the legislature of the State properly places a properly built hydrant at a point in the street designated by the municipal officers acting under legislative authority, there can be no liability for damages resulting from the bare location of the hydrant itself and unattended with negligence.

The legislative decision that public convenience and necessity required the erection of this hydrant upon such a place upon this public street as the municipal officers might approve is conclusive. *State* v. *Noyes*, 47 Maine, 189; *Spring* v. *Russell*, 7 Greenl. 273; *Talbot* v. *Hudson*, 16 Gray, 417; *Murtha* v. *Lovewell*, 166 Mass. 393.

The court has no power to review such decisions except where given by statute. *Old Colony R. R. Co., Pet'r.*, 163 Mass. 358. The municipal officers acted as the servants of the State. *Brimmer* v. *Boston*, 102 Mass. 19. All questions of expediency were finally left to the individuals to whom the State delegated the duty. *Lynch* v. *Forbes*, 161 Mass. 302; *Old Colony R. R. Co.* v. *R. & A. St. Ry.*, 161 Mass. 416; *Larcom* v. *Olin*, 160 Mass. 110; *Gilpatrick* v. *Biddeford*, 86 Maine, 539; *Bryant* v. *Westbrook*, 86 Maine, 453; *Gove* v. *Biddeford*, 85 Maine, 395.

When lawful acts are performed under the charter of the state no action can be maintained for injurious consequences unless so done as to constitute actionable negligence. *Lawler* v. *Baring Boom Co.*, 56 Maine, 443; *Brooks* v. *Cedar Brook Co.*, 82 Maine, 17; *Boothby* v. *R. R. Co.*, 51 Maine, 318; *Morrison* v. *Bucksport & Bangor R. R. Co.*, 67 Maine, 353; *Whittier* v. *P. & K. R. R. Co.*, 38 Maine, 26; *Cushman* v. *Smith*, 34 Maine, 247; *Rogers* v. *P. & K. R. R. Co.*, 35 Maine, 319; *Spring* v. *Russell*, 7 Greenl. 289; *Sumner* v. *Richardson Lake Dam Co.*, 71 Maine, 106; *Hamlin* v. *R. R. Co.*, 61 Wis. 510; *Rochette* v. *R. R. Co.*, 32 Minn. 201; *Lane* v. *No. Chi. City Ry. Co.*, 32 Fed. Rep. 270; *Struthers* v. *R. R. Co.*, 87 Penn. St. 282; *Richardson* v. *Vermont Central R. R. Co.*, 25 Vt. 465, (60 Am. Dec. 283, note); *Callender* v.

*Marsh*, 1 Pick. 418; *Burroughs* v. *Housatonic R. R. Co.*, 15 Conn. 124, (38 Am. Dec. 64); *Carson* v. *Western R. R. Co.*, 8 Gray, 423.

The essential point of the plaintiff's position is that the defendant's hydrant was a public nuisance, but a public nuisance cannot arise from the lawful use of a right granted by law. *Western Union Tel. Co.* v. *Hewett*, 4 Mackey, (D. C.) 424; *North Vernon* v. *Voegler*, 103 Ind. 314; *Randle* v. *Pac. R. R. Co.*, 65 Mo. 332.

There can be no nuisance so long as the corporation is lawfully acting under a legislative charter. The legislature is a final judge of what the public good requires. *Murtha* v. *Lovewell*, 166 Mass. 393; *Old Colony R. R. Co.* v. *R. & A. Ry.*, 161 Mass. 416.

A legislative permit for the use of a particular part of a street by a public corporation for a public purpose for a public use, prevents the possibility of the maintenance of such an action as this. The remark of the court in *Charlotte* v. *Pembroke Iron Works*, 82 Maine, 393, is peculiarly pertinent: "Highways and streets are for the public use and not alone for the people of the town or municipality where they are located. The whole community have an equal interest and right to all the privileges and advantages of the public ways."

The town maintains public roads as a public duty, not for its own peculiar gain. It has no proprietorship in the roads and bridges built and maintained by taxes upon its inhabitants. The roads and bridges belong to the public. All public rights are to be regulated by the legislature, the trustee for the public rights of the people. *Woodman* v. *Pitman*, 79 Maine, 456. Counsel also cited: *Young* v. *Yarmouth*, 9 Gray, 386.

In *Commonwealth* v. *Boston*, 97 Mass. 555, where the contention was made that the poles might be treated as a public nuisance, the court held that the determination of the mayor and aldermen was conclusive and not reviewable by a jury in any form of action whatever. Among other things the court said: "The Commonwealth has committed the rights of the public in this behalf to the exclusive cognizance and protection of the public officers having jurisdiction of the subject."

Upon the contention that the rule that points not raised in argument below would not apply to a case like this, brought up upon motion and invoking the existence of a public statute as a perfect defense, we cite: *Robinson* v. *Edwards*, 70 Maine, 158; *Webber* v. *Dunn*, 71 Maine, 331; *Wilson* v. *Borstel*, 73 Maine, 273; *Eaton* v. *Telegraph Co.*, 68 Maine, 63.

In *State* v. *Rogers*, 2 Greenl. 303, the court held that if a statute creating a corporation also contains provisions for punishment of public offenses in relation to such corporation, it is to be deemed a public statute and need not be proven. *New Portland* v. *New Vineyard*, 16 Maine, 69.

The defendant has a right to raise fundamental questions at a hearing on a motion for new trial when it appears, as it does in the case at bar, that on the undisputed facts the motion is not maintainable. *Wyman* v. *Banton*, 66 Maine, 171; *Rockland* v. *Morrill*, 71 Maine, 455; *Mathews* v. *Fisk*, 64 Maine, 101; *Rhoades* v. *Cotton*, 90 Maine, 454.

SITTING: EMERY, HASKELL, WHITEHOUSE, WISWELL, STROUT, FOGLER, JJ.

EMERY, J.   The defendant company was maintaining a hydrant in the sidewalk of a public street in Calais, not on either edge of the walk so as to be out of the way of the foot travel, but so near the middle of the walk as to be a vexatious and dangerous obstruction to the travel.   The plaintiff while rightfully and (as the jury found) carefully walking along the sidewalk in the evening fell over the hydrant and was injured.

In defending against the plaintiff's action for such injury it is not enough for the defendant company to show lawful authority to maintain the hydrant in the street or even in the sidewalk.   It must show lawful authority to maintain the hydrant at that particular and peculiar place in the sidewalk however dangerous it might be to persons lawfully using the sidewalk for traveling.

The only authority set up is that the city council of Calais, acting under powers conferred by the legislature for that purpose,

designated that spot in the sidewalk as the lawful position of the hydrant. It is not necessary to consider the validity of the action of the city council until it is made to appear by competent evidence that it did in fact designate that spot. To establish this proposition of fact, the defendant company introduced certain records of the city council, showing,— (1) 'that March 9, 1896, the city council "Ordered, That the Committee on Fire Department, with the Chief Engineer, and Willis E. McAllister, locate the eighty hydrants to be placed on the streets of the city, and designate where each hydrant shall be placed. Said location to be made by said Committee and reported to the city council at the next meeting."—(2) that March 22 following, the committee thus appointed made report as follows: "To the City Council. Your committee to which was referred the laying out of the hydrants submits the accompanying plan.

George Kalish,        W. E. King,

Josiah H. Pineo,      Willis E. McAllister,

Committee.

Voted, To accept the report and that the said 'Plan' be placed on file."

The natural inference from this action is that the committee located the positions for the hydrants, marked these positions on a plan, and returned the plan as their report. It is to be presumed that the positions marked on the plan were the positions designated upon the surface of the earth. Indeed a member of the committee called by the defendant company testified that such was the fact. Therefore, this plan, thus officially made and returned to the city council as the report of the committee and by the council accepted and placed on file, became the official and record evidence of the particular places on the surface of the earth where the company could lawfully maintain its hydrants. The production of this plan, and evidence fitting it to the earth's surface, would have determined whether this hydrant was in the position authorized by the city council.

But the plan was not produced, nor any certified or other copy of it; nor was its absence in any way accounted for. The city

clerk was not called, nor was there any evidence of any effort to obtain the plan or a copy. The defendant therefore utterly failed to adduce the best evidence that this hydrant was being maintained in the position designated by the city council. The defendant company's contention not being sustained by legally competent evidence must be overruled.

The defendant company, however, while not producing or accounting for the official plan, offered to show by the oral testimony of one of the committee that the hydrant was in fact in the position designated for it by the committee. This testimony was objected to by the plaintiff but was admitted. The witness then testified on the direct examination as follows:

Q. What did you do as a member of that committee?

A. I made a tracing of the city streets, and with the committee located the hydrants on them, and afterwards whenever the matter of location of hydrants came up, I went with the water company's engineer and definitely located that hydrant.

Q. Were you present at the location of all the hydrants?

A. Practically all of them.

Q. Were you present when the hydrant on North street, in front of the McCoy house, was located?

A. I can't remember that hydrant specially; but I located every hydrant that there was any question about.

Q. Would that hydrant be included in the number?

A. I think very likely it was.

And upon the cross-examination as follows:

Q. You said that you didn't know where that hydrant was located exactly?

A. I said I did not know whether I had to go there and make a special location for it. I thought very likely I did.

Q. You state now that you didn't know distinctly where that hydrant was put in?

A. I don't think I said just that.

Q. Did you know exactly where that hydrant was put in?

A. I might have at the time.

Q. Do you know?

A.   I cannot say positively that I did.

We think this testimony, even if admissible without accounting for the plan, falls short of proof that the dangerous place in which the hydrant was found was the place designated by the committee and marked on its plan.   The witness disclaims any recollection of designating that particular position for that particular hydrant. At the most he thought it very likely that he did.   If a water company desires to maintain a hydrant so near the middle of a sidewalk, in a position so dangerous to the public using the sidewalk, it may properly be held to make full legal proof of its authority to do so.   The oral testimony of one witness that " very likely " that was the position designated by the committee is manifestly insufficient.

The verdict of the jury upon all the other propositions of fact was sufficiently sustained by the evidence.

*Motion overruled.   Judgment on the verdict.*