CRAWFORD *et al.,* receivers, *v.* SWICORD.

Stockholders in a bank incorporated under the laws of this State since the passage of the act of 1893, whether original subscribers, or purchasers of stock from the corporation, or transferees of such stockholders, are individually liable equally and ratably (and not one for another as sureties) to depositors of said corporation for all moneys deposited therein, in an amount equal to the face value of their respective shares of stock.

No. 388.   JANUARY 16, 1918.

Certiorari to Court of Appeals (Case 7787, 20 *Ga. App.* 35).

Crawford and Culpepper, as receivers of the Bank of Whigham, a banking corporation chartered under the laws of Georgia since the act of 1893 (Acts 1893, p. 70), filed suit against Swicord, a stockholder in said insolvent bank, on his statutory liability to depositors. The petition disclosed the authority and necessity to bring the suit against the stockholder for the purpose of paying depositors, but did not allege that the defendant was an original subscriber to the capital stock of the bank, or had acquired his stock from it. The defendant filed a general demurrer, which was overruled; and upon the trial of the case a verdict was rendered against him for an amount equal to the face value of the shares of stock owned by him at the time of the failure of the bank. He sued out a writ of error to the Court of Appeals of Georgia, and

complained of error in overruling his demurrer and rendering judgment against him. The Court of Appeals (second division) held that the petition, "not alleging that the defendant belonged to that class of stockholders who acquired his stock from the bank itself, should have been dismissed on general demurrer," and reversed the judgment upon this ground, refusing to consider the other assignments of error. The receivers, defendants in error in the Court of Appeals, brought by certiorari the decision of that court to the Supreme Court for review.

*M. L. Ledford* and *Claude Christopher*, for plaintiffs.

*S. P. Cain* and *Little, Powell, Smith & Goldstein*, for defendant.

GEORGE, J. (After stating the foregoing facts.) The question presented is, should the petition, in order to assert liability, disclose that the defendant acquired his stock from the bank, and not by purchase through or from one who was an original subscriber. The answer to this question involves a construction of § 2270 of the Civil Code (1910). This section is taken from an act of 1893 (Acts 1893, p. 70), and is as follows: "Said corporation shall be responsible to its creditors to the extent of its capital and its assets, and each stockholder shall be individually liable for all the debts of said corporation to the extent of his or her unpaid shares of stock, and said stockholders shall be further and additionally individually liable equally and ratably (and not one for another as sureties) to depositors of said corporation, for all moneys deposited therein, in an amount equal to the face value of their respective shares of stock, it being the true intent and purpose of this section, that, as to depositors for all moneys deposited with said corporation, there shall be an individual liability upon such stockholder in such corporation, over and beyond the par value of his or her original shares of stock, equal in amount to the face value of said shares of stock: Provided that said liability of the stockholders shall not prevent depositors from having equal rank with all other creditors upon the capital, property, and assets of said bank."

"Prior to the act of 1893 there was no general law of this State regulating the individual liability of stockholders in banks. The superadded liability of the stockholder was, in each instance, prior to that act, dependent upon the provisions of the particular charter." *Wheatley* v. *Glover*, 125 *Ga.* 710, 716 (54 S. E. 626). In

*Reid* v. *DeJarnette,* 123 *Ga.* 787, 793 (51 S. E. 770, 3 Ann. Cas. 1117), Mr. Justice Evans, after a review of a number of bank charters that had been passed prior to 1893, said: "In view of all this legislation on the subject, we can not but conclude that the General Assembly intended each act of incorporation to speak for itself." So it resulted that the statutory liability of stockholders in banks—and such was very generally imposed—was in no two instances precisely the same. The charter considered in *Reid* v. *DeJarnette,* supra, imposed a statutory liability upon "subscribers to the capital stock," while the charter considered in *Wheatley* v. *Glover,* supra, limited the liability to those who held stock "at the time of suit." Still other charters might be cited under which this liability was imposed upon the stockholders who were such "at the time the debt was created." A further reference to the varying liability of stockholders in banks and other corporations might be made; but the point we wish to emphasize is that prior to the act of 1893 the policy adopted by the legislature of this State was to provide "in each instance under what circumstances and to what extent the owners of stock in such institutions may be held liable for corporate debts." This policy, or, more accurately, the absence of a general policy, bears somewhat upon the construction which we give to that portion of the act of 1893 codified in § 2270, supra. We think this manifest by the decision in *Reid* v. *DeJarnette,* supra. The author of Morse on Banks and Banking, 5th ed., vol. 2, § 679, p. 394, seems to so interpret the decision in that case. He says: "In Georgia, if the charter was granted prior to the act of 1893 (Acts 1893, p. 70; Civil Code 1895, §§ 1903-1911), liability attaches only upon stockholders who became such by subscribing to the capital stock, and not upon stockholders who by way of succession from the original stockholders became owners of stock," citing *Reid* v. *DeJarnette,* supra. The author overlooks the fact, however, that this statutory liability, prior to the act of 1893, was not uniformly imposed upon subscribers. The legislation of 1893 adopting a uniform policy with respect to the statutory liability of stockholders in banking corporations, was in a sense remedial, and not wholly in derogation of the common law. Statutes imposing individual liability upon stockholders in corporations are, in a strict sense, in derogation of the common law. This is very generally conceded. It is recognized in the decisions of

this court hereinbefore cited. Our statute is in derogation of the common law, in its·technical sense, but is. likewise remedial when considered in the light of legislation in this State fixing a separate and different liability upon the stockholders in practically all banks chartered by the legislature of this State prior to 1893. The statute is not, however, penal, and is not to be construed with the strictness required in the construction of a purely penal statute. Cf. *Ham* v. *Robinson Co.*, 146 *Ga.* 442 (2), 444 (91 S. E. 483). Properly considered, a stockholder's liability for his stock and assessments thereon, though fixed by statute, should be regarded as contractual. There is a contract running against each stockholder in a banking corporation in this State to the corporation itself, creditors of such corporation, and depositors as a special class of creditors. Looking to § 2270, supra, and considering it clause by clause: (1) "Said corporation shall be responsible to its creditors to the extent of its capital and its assets." This provision is merely declaratory of the common law, and refers to the liability existing against all corporations under the common law and the law of this State as it existed prior to the act. (2) "And each stockholder shall be individually liable for all the debts of said corporation to the extent of his or her unpaid shares of stock." Again, this clause is merely declaratory of the common law as applied to all corporations. 1 Cook on Corporations (7th ed.), § 199; *Commercial Bank* v. *Warthen,* 119 *Ga.* 990, 994 (47 S. E. 536). (3) "Said stockholders shall be further and additionally individually liable equally and ratably (and not one for another as sureties) to depositors of said corporation, for all moneys deposited therein, in an amount equal to the face value of their respective shares of stock." It is insisted by the defendant in certiorari that inasmuch as the common-law liability recited in the second clause of the section exists only against stockholders who have an unpaid subscription, it follows that the special statutory liability exists only against stockholders who have once had an unpaid subscription, that is, subscribers. If this highly technical construction is given to the statute, it requires no argument to show that only those subscribers who have an unpaid subscription at the time the liability arises come within its· provisions. This is not contended. The phrase "said stockholders," occurring in the clause of the statute last above quoted, creating or declaring the individual liability, relates

to "each stockholder" in the preceding clause of the statute. It is
erroneous to assume that only subscribers to the capital stock of
a corporation were at common law liable for the balance of an
unpaid subscription to the capital stock. This assumption is the
major premise in the argument of counsel for defendant in cer-
tiorari. Generally, "the transferee succeeds, not only to the rights,
but also to the liabilities, of the transferrer; he is bound to pay the
unpaid purchase-money of the shares as it shall be called for by
the directors." 10 Cyc. 701 (3), and citations; 1 Michie on
Banks and Banking, 208, § 48 (2); 1 Cook on Corporations (7th
ed.), §§ 256, 257, 258. We do not lose sight of the doctrine that
"Where one buys stock in the open market, in good faith, and with-
out notice that the subscription price thereof has not been paid up,
such a purchaser can not be held liable to pay the unpaid balance
of subscription." 1 Cook on Corporations, § 257. This doctrine
is announced in *Fouché* v. *Merchants' National Bank of Rome,*
110 Ga. 827 (36 S. E. 256). But the general rule is there recog-
nized, and the transferee of stock can not escape the liability of
the transferor for the unpaid price of his subscription, unless he
brings himself strictly within the reason of the rule. These ob-
servations are really without substantial bearing upon the ques-
tion; for we are of the opinion that § 2270 of the Civil Code, in
view of what has been said, should be construed neither liberally
nor strictly, but reasonably, so as to carry out the clear purpose
and policy for which it was enacted. Undoubtedly, the purpose
of the legislature was to provide protection to depositors for money
deposited by them in the banks of this State. The legislature was
not unmindful of the protection afforded depositors in national
banks by act of Congress. The depositors were considered as a
special class of creditors. The relation between the depositor and
the bank is a peculiar one. If either a strict or liberal construction
is to be given to the statute, carrying as it does a direct contractual
obligation against the stockholder and in favor of the depositor,
it would seem that the statute should be liberally construed in favor
of the depositor. A reasonable construction, however, is to be
given to the statute, and that will suffice to effect the intention and
purpose of the legislature. The Supreme Court of Alabama, in
McDonnell *v.* Alabama Gold Life Insurance Co., 85 Ala. 401, 408
(5 So. 120), has adopted the rule of "reasonable construction" as

applied to a similar statute, as being the better rule, and the one generally applied.   If a statute be susceptible of two constructions, one consistent with natural equity and justice, and the other not, the court should give the former construction to it.   *Lombard* v. *Trustees,* 73 *Ga.* 322.   The legislature intended to protect depositors in banks chartered under the authority of our laws, by imposing a statutory liability upon each stockholder in such banks.   The liability imposed upon the stockholder in favor of the depositor can never, in reason and in justice, be separated from the power and authority to control and manage the affairs of the bank.   When one becomes a stockholder, whether by subscription to the stock, or by purchase from the bank, or by purchase from one who thus acquired his stock, he comes into the power to manage and control the affairs of the corporation, and his liability to depositors therein is rightly connected with this power to control and direct the affairs of the corporation.

We therefore conclude that a proper and reasonable construction of the provisions of § 2270, supra, in so far as the construction of the section is involved in the question here presented, is as follows:   (1) Said corporation is liable to its creditors to the extent of its capital and assets.   (2) Each stockholder is liable— (a) to creditors, for the debts of the corporation, to the extent of his unpaid shares of stock; and (b) to depositors, in an amount equal to the face value of his stock.   Of course the stockholders are liable equally and ratably, and not one for another as sureties.

The explanatory clause contained in the section under consideration expresses the legislative construction of the act, and is authoritative.   If the explanatory clause is itself ambiguous, the meaning of the statute, if clear, will not be disturbed thereby.   State v. Standard Oil Co., 61 Or. 438 (123 Pac. 40, Ann. Cas. 1914B, 179).   It is true that the explanatory clause declares that "there shall be an individual liability upon such stockholder in such corporation, over and beyond the par value of his or her original shares of stock."   We think that the qualifying word "such," appearing before the word "stockholder," necessarily refers to such stockholder as is first mentioned in the act, that is, to "each stockholder."   The clause, "over and beyond the par value of his or her original shares of stock," is not intended to impose liability, occurring as it does in this explanatory clause of the statute, but is intended to fix a

basis or standard for assessment against each stockholder in the event it becomes necessary to assess the stockholder for the purpose of paying depositors. The word "original" occurring in this clause is a relative term.

It is true, as ruled in the first and second headnotes in *Wheatley v. Glover,* supra, that "the act of 1838 (Code of 1882, § 1496), did not have the effect to impose upon the stockholders in a bank or other corporation a liability beyond the amount of the stock owned, but merely provided a method by which a stockholder who had transferred his stock might relieve himself of an existing individual liability imposed by the charter of the corporation. Neither was such a liability imposed by the act of 1892 (Acts 1892, p. 55), nor by the act of 1894 (Civil Code, § 1888). These acts simply provided a different manner of discharge from liability from that prescribed in the act of 1838." The act of 1894 referred to is codified in §§ 2247 and 2248 of the Civil Code of 1910. Nevertheless this act, following as it did at the session of the legislature next after the passage of the act of 1893, has some bearing upon the true construction of § 2270, contained in the act of 1893. Section 2248, supra, is as follows: "The stockholder in whose name the capital stock stands upon the books of such corporation, at the date of the failure, shall be primarily liable to respond upon such individual liability." The legislature supposed that it had fastened a liability upon each stockholder, and that this liability did not cease upon the sale of the stock by the original subscriber, but passed to his successor. It is beside the question to say that this section has no reference to the individual liability created by § 2270, supra. It is true that § 2247, supra, refers to the individual liability of a stockholder in any corporation existing under the charter, but § 2270 is an implied provision in the charter of every bank incorporated in this State since the passage of the act of 1893. The language employed in §§ 2247 and 2248, supra, clearly indicates the intention of the legislature, in the passage of the act of the previous year, to provide protection to depositors in banking corporations, by creating a uniform liability against all stockholders in such banks; and it did not intend, as is made manifest by the provisions of the sections last quoted, to separate this liability from the power to control and manage the corporations. It intended that the protection guaranteed by this

imposed liability should continue to all depositors, and beyond the time when some or even all of the original stockholders have ceased to be stockholders of such corporations. Under the laws of this State, a bank can not be organized by dummies and the stock immediately thereafter transferred to others who, with the beneficial right to receive deposits and manage the affairs of the corporation, are yet without statutory liability to those who in good faith place their money with the bank for safe-keeping. The legislature of the State committed itself to no such shortsighted policy.

The judgment of the Court of Appeals is reversed, and the case is remanded to that court for further proceeding not inconsistent with this opinion.

*Judgment reversed. All the Justices concur.*