## DAVIDSON v. CITIZENS BANK OF FORT VALLEY.

No. 7431.  JULY 19, 1930.  REHEARING DENIED SEPTEMBER 17, 1930.

*W. H. Harris,* for plaintiff in error.  *Park & Strozier,* contra.

HINES, J.  Davidson owned 20 shares of the capital stock of the Citizens Bank of Fort Valley at the date of its failure on November 27, 1928.  At that time he had on deposit in said bank the sum of $2,267.47.  The superintendent of banks made an assessment of 100 per cent. against the stockholders to pay depositors of this bank, and, to enforce the assessment against Davidson, issued an execution against him for $2,000.  Davidson had all his money, except that deposited in the above bank, on deposit in the Fourth National Bank of Macon.  The latter bank closed the day before the former bank closed.  The superintendent of banks threatened to have the execution recorded on the general execution docket unless payment was made by a named day.  Davidson owned considerable farming properties all free from liens, and considerable properties of other kinds, and conducted large farming operations.  He had no other banking connections except with

the above two banks, and financial conditions in his section were in a critical state. He had no means of preventing the superintendent of banks from recording said execution against him, except by payment of the execution. He was sure that he could not make the necessary new banking connections and could not get the money with which to operate his farms, which would result in the stopping of his business and in big losses, if this execution was placed of record against him. Under these circumstances, having no alternative, he paid the execution on February 8, 1929, making the payment directly to the Citizens Bank of Fort Valley. Under this state of facts Davidson claims that he made this payment under duress. He deemed the loss by payment of the execution less than the loss he would sustain if the execution was recorded. He further asserts that the act of August 26, 1925, under which the superintendent of banks claims the authority, without any hearing, to issue executions against bank stockholders, which would from the date of such issuance become a lien against all the property of the stockholders, is void because it violates the due-process clause of the 14th amendment to the constitution of the United States, and paragraph 3 of section 1 of article 1 of the constitution of this State, which provides that no person shall be deprived of property without due process of law. Davidson brought this suit against the bank, setting up the foregoing facts and praying for a judgment for the amount of $2,000 thus paid to the bank under duress, as he claims, upon the ground that said sum should be refunded to him less the amount of dividends he had received thereon. The bank demurred to this petition, upon the ground that Davidson could not set off his deposit in the bank against his stockholder's liability for such assessment. One of the controlling questions in this case is whether a stockholder in an insolvent bank, which has been taken over by the superintendent of banks for liquidation, can set off his deposit in the bank against his stockholder's liability for such assessment. It is conceded that this question has been decided against petitioner, in *Swicord* v. *Crawford*, 148 *Ga.* 719 (supra); and his counsel requests this court to review and overrule that decision.

■ Prior to 1893 there was no general statutory liability of stockholders for deposits made in banks over and above any amount which might be due upon their subscriptions to the capital stock

thereof. In that year the legislature passed an act making stockholders, in addition to their liability for any unpaid subscriptions to the capital stock of banks, individually liable "to depositors . . for all moneys deposited therein, in an amount equal to the face value of their respective shares of stock." Acts 1893, p. 72; Civil Code (1910), § 2270; *Wheatley* v. *Glover,* 125 *Ga.* 710 (54 S. E. 626). By the act of 1894 it was provided that "Such individual liability shall be an asset of such corporation, to be enforced by the assignee, receiver, or other officer having the legal right to collect, marshal, and distribute the assets of such failed corporation." Acts 1894, p. 76; Civil Code (1910), § 2249. In *Moore* v. *Ripley,* 106 *Ga.* 556, 561 (32 S. E. 647), it was declared that "While the act declares the liability to be an asset of the bank, it does so in the sense of providing for the enforcement of the right previously given, and for the purpose of distributing the proceeds arising from the liability among the persons entitled to it by the act of incorporation." Plainly the legislature, when declaring in the act of 1894 that this individual liability of the stockholder was an asset of such corporation, was speaking merely of the method of its enforcement. It did not seek to change the liability from one to depositors to one to the bank. The liability still was one to the depositors. In *Lamar* v. *Taylor,* 141 *Ga.* 227, 234 (80 S. E. 1085), this court was dealing with a like liability of stockholders in the charter of a bank created and amended prior to the act of 1894. It was said: "By the act of December 18, 1894 (Acts 1894, p. 76, Civil Code (1910), § 2249), referring to the statutory liability of stockholders, it is declared that 'such individual liability shall be an asset of such bank or other incorporation, to be enforced by the assignee, receiver, or other officer having the legal right to collect, marshal, and distribute the assets of such failed bank or other corporation.' We think there can be no doubt that, under the terms of this act, the right to bring suit on such liability was conferred on a receiver, where one was appointed. It did not change the fact that the recovery was for the benefit of depositors, or alter the extent of the liability; but, instead of having numerous suits to enforce the statutory liability which might exist on the part of stockholders, it provided for collecting and disbursing the recovery through one agency of the law."

Was this situation changed by the banking act of 1919, or any

subsequent amendment thereto? The principle embraced in the act of 1893 (§ 2270, supra) was re-enacted by the banking act of 1919, and made applicable to banks incorporated under that act. Again this liability was declared to be one to depositors. Acts 1919, p. 189; Park's Code Supp. 1922, § 2279(a). By the banking act it is made the duty of the superintendent to make a careful estimate of the value of the assets that can be converted into cash within one year, and of the amount of such cash assets which will be available to pay depositors. This act further provides that "he shall immediately thereupon make an assessment upon the stockholders of said bank, sufficient, when added to the cash assets so available for depositors, to pay the said depositors in full." There is a further provision that if such assessment is insufficient to pay depositors in full, further assessments may be made until the full liability is exhausted. Acts 1919, p. 160; Acts 1925, p. 129; Park's Code Supp. 1922, 1926, § 2268(t). By the act of August 26, 1925, it is provided that "Within ninety (90) days after the superintendent of banks has taken possession of the assets and business of any bank, as is in this act authorized, he shall make a careful estimate of the values of the cash assets of said bank which can probably be converted into cash within one year after so taking possession of the assets and business of said bank, and of the amount of such cash assets which will be available to pay depositors, and he shall immediately thereupon make an assessment upon the stockholders of said bank, sufficient, when added to the cash assets so available for depositors, to pay the said depositors in full, provided that such assessment shall not exceed the liability of stockholders upon their said stock." Acts 1925, pp. 119, 130. By the 13th section of said act it is provided that section 1 of article 18 of the banking act of 1919 be amended by adding to said section the words, "provided further, that the funds realized from the stockholders' liability, as herein provided for, shall not be disbursed or distributed to those depositors holding a preference or a priority given them by law or otherwise, nor to any depositor holding assets of said bank pledged as security for said deposit, except to the extent of the amount of the excess of said deposit over the value of such security; and this provision shall apply irrespective of whether the bank is or was not incorporated under this act." Acts 1925, pp. 119, 133; Park's Code Supp. 1926, § 2279(a). Again, the

banking act of 1919 provides that "The individual liability of stockholders . . shall be assets of such bank, to be enforced only by and through the superintendent of banks." Acts 1919, p. 190. The method of enforcing such liability by and through the superintendent of banks has been pointed out above, and the purpose for which such liability can be enforced is set out. Under the laws with which we have been dealing up to this point, the stockholder's liability to depositors, though declared to be the assets of the bank, is one solely due to depositors, and not one for the payment of the general debts of the bank.

But it is insisted that this has been changed by section 19 of the act of August 25, 1927. Acts 1927, pp. 195, 199. The purpose of this section of this act was simply to fix the priority of payment of the claims of depositors. Under the banking act of 1919, six classes of debts came ahead of depositors. Under the act of 1927, depositors are to be paid first. It gives additional protection to depositors, and was not intended to take away from them any protection which they enjoyed under previous laws. It is urged by counsel for the plaintiff, that, as the act of 1927 provides for the payment of depositors first out of the assets of the bank, there is no necessity for them to have the exclusive benefit of this statutory liability of stockholders. To this contention we can not agree. The act of 1927 merely fixes the priority of payment of depositors; and in no way changes the liability of stockholders in this respect from one to the depositors to one to the bank. In the motion for a rehearing counsel for the plaintiff concedes that the assets of insolvent banks are, as a general rule, largely insufficient to pay depositors. From this fact the necessity arises for applying these funds to the payment of deposits. If stockholders are permitted to set off against this statutory liability to depositors deposits due to them by the bank, the assets arising from this source and properly applicable to the payment of depositors would be diverted; and the right of depositors to be paid therefrom would be partially or wholly destroyed.

In the motion for a rehearing it is conceded that the act of 1927 "added to the rights of depositors, and did not take away any rights" previously given them. The banking act of 1919, and the amendment thereto of 1925, makes a bank "responsible to its creditors to the extent of its capital and its assets," and makes

·"each stockholder . . liable for all the debts of said bank to the extent of the balance remaining unpaid on his or her shares of stock," and makes all stockholders "further and additionally individually liable, equally and ratably (and not one for another), to depositors of such bank for all moneys deposited therein, in an amount equal to the face value of their respective shares of stock." In *Swicord* v. *Crawford,* supra, it was held that this liability of stockholders is one to depositors alone, and not one in behalf of creditors of the bank. This ruling follows the statute, which in so many words makes this liability of stockholders one to depositors alone and not one to the creditors of the bank. As we have seen, this right was one given to stockholders prior to the passage of the act of 1927; and it is clear, as is conceded by counsel for the plaintiff, that the act of 1927 did not take it away from depositors. The act of 1927 merely gives to depositors another right. It makes all of the assets of a bank, including funds derived from this stockholders' liability, subject to the payment of depositors after the payment of the expenses of administration. So both of these rights still exist. To permit stockholders to set off deposits due them by the bank will in effect partially destroy their liability to depositors; and thus deprive depositors of a right which existed prior to the act of 1927, and which, in our opinion, was not taken away by the priority of payment given to depositors by the act of 1927. Stockholders who are depositors would, of course, be entitled to their pro rata share of the funds arising from the enforcement of this liability. The prior statute creating this liability of stockholders to depositors has not been repealed upon the idea that the reason of its enactment had ceased and that therefore it was no longer of force.

So we are of the opinion that the statutory liabilities of stockholders to depositors in a bank are not assets of the bank, save in the sense that they may be enforced by the superintendent of banks for the benefit of depositors. This stockholders' liability is one due to the depositors, and not to the bank. There is therefore no mutuality between this liability of stockholders to depositors, and a debt due by the bank for deposits to stockholders. The latter can not be set off against the former. So we adhere to the decision in *Swicord* v. *Crawford,* supra, and decline to overrule it. In *Bennett* v. *Wilkes County,* 164 *Ga.* 790 (139 S. E. 566), we

were dealing with the liability of stockholders to depositors alone. In such a case, assets realized from such liability were assets of the bank, from which all of its creditors could be paid.

■ Davidson attacks as unconstitutional the law providing for the assessments of stockholders, upon the ground that it denies due process of law to the stockholders, in violation of the 14th amendment to the constitution of the United States, and the due-process clause of the State constitution. He makes the point that the law permits the superintendent of banks to make the assessment, to issue an execution therefor, and place the same on the general execution docket, thus creating an apparent lien on his property, without giving him the right to be heard before this is done. This contention has been decided against the plaintiff by both this court and the Supreme Court of the United States. In *Coffin* v. *Bennett,* 164 *Ga.* 350 (138 S. E. 670), this court held that section 20 of article 7 of the banking act of 1919 (Acts 1919, p. 135), as amended by the act of August 25, 1925 (Ga. Laws 1925, p. 119), provided only for a summary issuance of executions against stockholders of banks, as a mode of commencing suits against them to enforce their statutory liability to depositors, and that the act of 1919, as amended by the act of 1925, accorded to stockholders the right to contest by affidavit of illegality their liability for the assessments levied by the superintendent of banks, and the amount and necessity thereof, and was not unconstitutional as denying to such stockholders due process of law. The case was taken to the Supreme Court of the United States. That court held that "The objection urged by the plaintiff in error seems to be that this section purports to authorize an execution and the creation of a lien at the beginning, before and without any judicial proceeding. But the stockholders are allowed to raise and try every possible defense by an affidavit of illegality, which, as said by the Supreme Court of Georgia, makes the so-called execution 'a mode only of commencing against them suits to enforce their statutory liability to depositors.' " Coffin *v.* Bennett, 277 U. S. 29 (48 Sup. Ct. 422, 72 L. ed. 768). So the contention which plaintiff makes was dealt with both by this court and by the Supreme Court of the United States, and it was decided against him.

■ Plaintiff further contends that he paid the execution under duress. The facts on which he bases this contention are fully set

out in the statement at the beginning of this opinion. His payment of this execution under these facts does not amount to legal duress. Voluntary payments of claims can not be recovered "unless made under an urgent and immediate necessity therefor, or to release person or property from detention, or to prevent an immediate seizure of person or property." Civil Code (1910), § 4317. "Duress consists in any illegal imprisonment, or legal imprisonment used for an illegal purpose, or threats of bodily or other harm, or other means amounting to or tending to coerce the will of another, and actually inducing him to do an act contrary to his free will." § 4116. Duress consists of imprisonment, of threats, or other arts, by which the free will of the party is restrained, and his consent thereby induced. § 4255. Payment of an illegal assessment for street improvements, merely to prevent a levy, is not made under duress and can not be recovered. *Hoke* v. *Atlanta,* 107 *Ga.* 416 (33 S. E. 412). The payment by the plaintiff of the execution issued by the superintendent of banks against him was not even made under protest. He could have filed an affidavit of illegality as soon as a levy was made, as provided by the act of 1925, and thus have converted this summary process into mesne process. Such procedure would hardly have produced the dire consequences pictured by the plaintiff in his petition. As we have said, the facts alleged by the plaintiff in his petition to show that the payment was made under duress do not constitute in law such duress as would enable him to recover the payment as an involuntary payment.

*Judgment affirmed. All the Justices concur, except Hill, J., disqualified.*

RUSSELL, C. J., concurring specially. It is my opinion that the request to review the case of *Swicord* v. *Crawford,* 148 *Ga.* 719, should be granted and the decision overruled; but since it is not possible to obtain that unanimous consent required by law in order to overrule that case, I concur in the opinion delivered by Mr. Justice Hines in this case in behalf of the court, in which the law is so clearly and aptly set forth, as well as in the judgment of affirmance.

### ON MOTION FOR REHEARING.

HINES, J. 1. Counsel for the plaintiff takes offense at some of the language used by the writer in his opinion in this case. The language to which he excepts does not bear the construction which

he puts upon it, and is in no way a depreciatory reflection upon his logic; but as counsel thinks otherwise, the writer cheerfully disclaims any such purpose. Furthermore, we withdraw the language to which he takes exception, and insert in its place a clearer statement of our argument in reply to his contention.

2. In the second ground of the motion for rehearing it is insisted that we erred in holding that the execution which issued against the stockholder in this case was under the act of 1925, and that this act was constitutional as it gave to the stockholder a right to defend against an execution issued thereunder. It is insisted that we overlooked the fact that the execution in this case recites that it was "issued by and under the authority of the said act of the legislature of the State of Georgia, approved August 16, 1919, amendment August 14, 1920," and that it was not issued under the act of 1925. It is urged that this court is powerless to change the language of the writ as issued by the banking department, as this court is powerless to change the language of an act of the legislature. We did not undertake to change the recital of this execution. We simply construed the meaning of this recital. We hold that the meaning of the recital that the execution was issued under the act of August 16, 1919, is not to be determined from that act as it was originally passed, but from that act as it was amended at the date of the issuance of the execution. After the passage of the act of 1919 it was amended by the act of 1925, so as to provide for defenses to executions issued under the act of 1919 as so amended. The language in this recital, "amendment approved August 14, 1920," should be disregarded, as the act of August 14, 1920, does not in any way refer to the issuance of executions to enforce stockholders' liability to depositors in insolvent banks. Property construed, this execution was issued under the act of 1919 as amended by the act of 1925.

3. In the third ground of the motion for rehearing it is urged that we overlooked, in passing upon the question of duress, the decision in *Logan* v. *Sumter, 28 Ga.* 242 (73 Am. D. 755), in which it was held that "A defendant who has paid an execution on which he is not liable may recover back the money—he having paid it under the belief that he was liable." In that case the defendant paid when he was not liable. In the instant case the defendant admitted liability, but was attempting to set off a counter-demand against the same.

4. In the fourth ground of the motion for rehearing it is asserted that we overlooked section 7 of article 18 of the banking act of 1919, making the same provisions as to the individual liability of stockholders as are made for the liability of persons doing business in the name of a bank before proper organization, and declaring that the liabilities of stockholders "shall be assets of such bank," and that both of these liabilities shall "be enforced only by and through the superintendent of banks." Movant further assets that we overlooked the caption of the act of 1894, and the language used in section 3 thereof, which clearly shows that the aim of the legislature was to make the stockholders' liabilities actually assets of the bank, and that the same were to be collected and administered as assets of the bank. It is further insisted that we overlooked the provisions of section 20 of article 7 of the banking act of 1919 (Acts 1919, pp. 135, 160), and the language in the amendment thereto of 1925 (Acts 1925, pp. 119, 131), which provides, that, "After all the indebtedness of such bank is paid in full, the remaining assets of such bank shall be applied, first, to reimbursing the stockholders who have paid such assessment or assessments, and thereafter prorated to all the stockholders."

After due consideration, we do not think that the provisions of the statutes referred to require a different conclusion from that reached and expressed in the opinion rendered in this case. By these statutory provisions funds collected from the liability of stockholders to depositors are assets of the bank only in the sense that they are to be collected and applied to the payment of depositors, and not for the payment of debts which the bank may be due to depositors. *Motion for rehearing denied.*